**The SPEE–FLO MANUFACTURING CORPORATION, Plaintiff,**

**v.**

**GRAY COMPANY, Inc., Defendant.**

**Civ. A. No. 14247.**

United States District Court
S. D. Texas,
Houston Division.

Dec. 31, 1964.

Richey, McNenny & Farrington, Cleveland, Ohio, H. F. McNenny, Cleveland Ohio, and Hutcheson, Taliaferro & Hutcheson, Houston, Tex., Edward Hutcheson, Houston, Tex., for plaintiff.

Vinson, Elkins, Weems & Searls, Houston, Tex., J. V. Martin, Houston, Tex., and Leonard L. Kalish, Philadelphia, Pa., for defendant.

## SUPPLEMENTAL MEMORANDUM

CONNALLY, Chief Judge.

In an effort to avoid the finding of direct infringement of Claims 1, 2, 3, and 8 embodied in the memorandum opinion, D.C., 237 F.Supp. 616 (adopted as Findings of Fact and Conclusions of Law) of October 14, 1964, defendant on November 3, 1964, filed its "Motion for the Correction and Clarification of Court's Memorandum and Opinion of October 14, 1964." While the case had theretofore been fully argued and briefed, further argument was had at defendant's request December 15, 1964, and additional briefs have been filed and considered.

While I continue to entertain the views expressed in the original opinion, in deference to counsel and for the purpose of clarification, the following is added.

*Claims 1, 2 and 8*

The controversy here stems from use of the term "body" in each of these claims. As stated previously, each calls for "means for hydraulically atomizing and spraying liquids *comprising a body* * * *". As used in these claims, I construe the term "body" to refer to the barrel of the spray gun, as reflected in the preferred embodiment shown in the patent. In imitating the plaintiff's device, defendant has done no more than to move forward the pre-orifice in the barrel and construct that forward portion in such fashion that the entire assembly may be removed from the gun itself.

It will be noted that Claims 1, 2 and 8 do not call for a spray gun (as do Claims 4, 5 and 6). Rather, the call is for "a body", with the necessary passageway connected to a source of liquid, and with a spray tip secured to said "body". The term "body" in my judgment is sufficiently broad to include the detachable unit in which the defendant locates the passageway to be connected to the source of liquid, secures its spray tip, etc. just as it is sufficiently broad to include the entire spray gun. As stated in the original opinion, the defendant's tip, when affixed to and made a part of the unpatented and prior art spray gun, "does the same work in substantially the same way and accomplishes the same result as does the patented device." Thus I am of the view that in manufacturing and selling its "FF" tips, the defendant directly infringes Claims 1, 2 and 8, in that every element of those claims is found in the defendant's device.

*Claim 3*

The first five lines of said claim read as follows:

"In an airless paint spray gun of the type having a spray tip with a transversely elongated sharp-edged opening therethrough and a passageway in the gun for paint under pressure leading to said spray tip, a valve in said passageway to control the flow of paint to the spray tip, * * * etc."

Following the quotation are the various elements showing the pre-orifice device. The defendant contends that by use of the quoted language Claim 3 should be construed as calling for the spray gun as one of the elements of said claim. Defendant states its contention clearly, in these words, "Claim 3 requires gun + spray tip + disc."

Plaintiff argues that the quoted language of Claim 3 should not be construed as calling for the gun as an element thereof. It argues that the reference to the gun is no more than a statement of the mechanical aggregation within which the elements of Claim 3 are housed and of which they form a part, relying upon Williams Mfg. Co. v. United Shoe Machinery Corp., 316 U.S. 364, 62 S.Ct. 1179, 86 L.Ed. 1537. Under that authority, I adopt the plaintiff's construction. All claims except Claim 3 call for a "means for hydraulically atomizing and spraying

paint, comprising * * * a body" (1, 2 and 8) or an "airless spray gun" (4, 5 and 6) as an element thereof. The language of Claim 3, quoted in the preceding paragraph, merely refers to an airless spray gun as the mechanical device in which the elements of that particular claim are embodied, and does not make the gun an element thereof. As stated in the Memorandum of October 14, 1964, by the manufacture and sale of its "FF" tips, the defendant has directly infringed Claim 3.

*Claims 4, 5 and 6; Inducing and Contributory Infringement*

The defendant sells its products, including its spray guns, its regular tips, and its accused "FF" tips, only to its franchised dealers. The dealers in turn sell to the trade. The defendant packages, prices, and sells its tips separate from its spray guns. As stated in the original opinion, the accused "FF" tips, while designed primarily for use with the defendant's guns, may be used with guns of other manufacture. This is customary throughout the industry.

 Claims 4, 5 and 6 each call for "an airless spray gun" as an element thereof. Thus in the sale of its "FF" tips alone, the defendant is guilty of no direct infringement. There is no evidence of a particular sale or use by the defendant within this District and Division of its gun and "FF" tip assembled.

The defendant undoubtedly was aware of the existence of plaintiff's patent, was aware of the fact that its "FF" tip embodied the various elements called for in Claims 4, 5 and 6 thereof save for the spray gun itself. Inevitably it must have known that its "FF" tips could not be used with any spray gun by the ultimate user without direct infringement taking place. In its advertising in the trade journals of its "FF" tips wherein its virtues are extolled in the usual laudatory fashion, it knowingly sought to and did cause the purchase of said tips and the use thereof. This constituted the direct infringement by the ultimate user.

The "FF" tip is not "a staple article or commodity of commerce suitable for substantial non-infringing use." Any use except for the stated purpose and in the customary manner is both farfetched and illusory. The defendant sold its "FF" tips for the purpose and with the expectation that they would be used either with its own guns, or those of another manufacturer, and that such use would constitute a direct infringement.

As stated in the original opinion, such conduct of the defendant constitutes inducement to infringe, and the contributory infringement of Claims 4, 5, and 6.

The foregoing is adopted as Supplemental Findings of Fact and Conclusions of Law to be read in connection with those filed October 14, 1964.